# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SYLVIA LESZANCZUK, | ) |
| Plaintiff, | ) Case No. 19-cv-3038 |
| v. | ) Judge Robert M. Dow, Jr. |
| CARRINGTON MORTGAGE SERVICES, LLC, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sylvia Leszanczuk ("Plaintiff") brings suit on behalf of two putative classes against Defendant Carrington Mortgage Services, LLC ("Defendant"). She asserts claims for breach of contract, unjust enrichment, and violations of the Illinois Consumer Fairness Act. Before the Court is Defendant's motion to dismiss [13] for failure to state a claim and lack of personal jurisdiction. For the reasons set forth below, Defendant's motion to dismiss [13] is granted in part and denied in part. Specifically, the Court denies Defendant's motion to dismiss for lack of personal jurisdiction but grants the motion to dismiss for failure to state a claim. Plaintiff is given until May 1, 2020 to file an amended complaint consistent with this opinion. The case is set for further status May 12, 2020 at 9:00 a.m.

## I.     Background[1]

On January 29, 2010, Plaintiff entered into a mortgage with Netmore America Mortgage, LLC. Defendant acquired the note and the mortgage and took over loan servicing. Plaintiff's

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

mortgage was insured by the Federal Housing Administration ("FHA"), which rendered it subject to certain regulations of the U.S. Department of Housing and Urban Development ("HUD").

When Defendant assumed the mortgage, Plaintiff contacted Defendant to set up an account to make timely payments. The complaint was not entirely clear on when this occurred, but it appears have been in November or December 2016, as the complaint discusses the December payment. Plaintiff was informed that her account was stuck in some kind of administrative limbo, and Defendant was not yet able to receive or process any payments from her. Defendant further elaborated that, as a consequence of this limbo, Plaintiff had a grace period and did not have to make any payments until several months hence.

Although Plaintiff was told that she would not yet have to make mortgage payments, Defendant nonetheless considered her in default and inspected the property on February 10, 2017 (presumably to ensure it was not vacant). Although the inspection was cursory, Defendant charged Plaintiff $20 for the inspection. Plaintiff paid the fee, as it was included on her subsequent mortgage statement.

Plaintiff filed the instant suit in state court, and Defendant removed. See generally [1]. Plaintiff's complaint asserts two claims on behalf of Plaintiff and, respectively, nationwide and state-wide classes—breach of contract (Count I) and a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA") (Count III). Plaintiff has dropped her alternative claim for unjust enrichment. See [23 at 2 n.1.] Before the Court is Plaintiff's motion to dismiss [13] the entire complaint for failure to state a claim and to dismiss the (prospective) out-of-state class members for lack of personal jurisdiction.

## II. Legal Standard

"In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" See, *e.g.*, *Lodholtz v. York Risk Serv. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's complaint needs not include "detailed factual allegations," but it must contain more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Thus, the complaint must include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, the Court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016)). ICFA claims based on unfairness, as opposed to deception, need not satisfy the heightened pleading requirements of Rule 9. *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).

## III. Analysis

Although this case is superficially similar to other recent cases regarding inspection fees, it differs in that this named Plaintiff apparently paid the disputed fee. See *Miszczyszyn v. J.P. Morgan Chase Bank, N.A.*, 2019 WL 1254912, at *5–6 (N.D. Ill. Mar. 19, 2019) (dismissing suit when plaintiff did not allege she had paid fee); *Tirado v. Bank of America, N.A.*, 2019 WL 4694990, at *6–8 (N.D. Ill. Sept. 26, 2019) (same).[2] However, before addressing the merits, the Court must address Defendant's argument that the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Sup. Ct. of California*, ––– U.S. –––, 137 S. Ct. 1773, 1780, 198 L.Ed.2d 395 (2017)

---

[2] In light of *Miszczyszyn*, Plaintiff has dropped her claims for unjust enrichment. See [23 at 2 n.1]; see also *Miszczyszyn*, 2019 WL 1254912, at *4–5 (dismissing unjust enrichment count).

("*BMS*"), requires dismissal of the purported class action claims of all non-Illinois residents under Rule 12(b)(2).

### A. Personal Jurisdiction

The Court has previously noted a significant split among the courts in this district, and across the country, regarding whether a plaintiff may bring a nationwide class action when the court in question may only exercise specific jurisdiction over the defendant. *Miszczyszyn*, 2019 WL 1254912, at *3 (collecting cases). This split arose from the Supreme Court's decision in *BMS*, which held that a state court cannot exercise personal jurisdiction over a named plaintiff's claims when (1) the defendant is not "at home" in the forum and (2) that plaintiff's claims do not arise from any interaction with the forum. See generally *BMS*, 137 S. Ct. 1773. This Court had reserved judgment on the applicability of this decision to the putative mortgage inspection fee class actions until the Seventh Circuit could weigh in on the reach of the Supreme Court's opinion in *BMS*—specifically, whether it reached putative nationwide class actions filed in federal court. See *Miszczyszyn*, 2019 WL 1254912, at *3; *Tirado*, 2019 WL 4694990, at *5.

The Seventh Circuit has now weighed in and concluded that "the unnamed class members are not required to" "demonstrate either general or specific personal jurisdiction." *Mussat v. IQVIA, Inc.*, --- F.3d ---, 2020 WL 1161166, at *4 (7th Cir. Mar. 11, 2020); see also *Molock v. Whole Foods Market Group, Inc.*, --- F.3d ---, 2020 WL 1146733, at *1 (D.C. Cir. Mar. 10, 2020) ("Absent class certification, putative class members are not parties before a court, rendering the defendant's [Rule 12(b)(2)] motion premature"). Here, Defendant moved to dismiss the unnamed, out-of-state class members for lacking either general or specific personal jurisdiction, so its motion to dismiss must be denied. *Id.*

**B. Breach of Contract**

Plaintiff argues that as an FHA loan, certain HUD regulations are incorporated into the mortgage. According to Plaintiff, those regulations, in turn, prohibit a lender from charging inspection fees under certain circumstances. Defendants counter that the regulations were not incorporated into the contract as would be necessary to sustain a breach of contract action under Illinois law.

First, whether and to what extent HUD regulations are incorporated into a contract are questions of state contract law.[3] *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 736 (7th Cir. 2002); see also, *e.g.*, *Dorado v. Bank of America, N.A.*, 2016 WL 3924115, at *3 (S.D. Fla. July 21, 2016). In Illinois, "[t]he primary objective in construing a contract is to give effect to the intent of the parties." *Gallagher v. Lenart*, 226 Ill.2d 208, 232 (2007). The language of a contract provides the best indication of that intent. *Id.* (citation omitted); see also *Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*, 870 F.3d 682, 690 (7th Cir. 2017) (applying Illinois contract law) ("A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent."). If the contract's language is facially unambiguous, its words "must be given their plain, ordinary, and popular meaning." *Central Illinois Light Co. v. Home Ins. Co.*, 213 Ill.2d 141, 154 (2004). If the contract's language

---

[3] Plaintiff implies that some or all HUD regulations are necessarily incorporated into FHA-backed loans. See [23 at 4.] But the only case cited for that proposition "note[d] that it is undisputed here that the failure to comply with HUD's *mortgage services requirements* contained in its regulations is a *defense to a mortgage foreclosure action*." *PNC Bank, N.A., v. Wilson*, 74 N.E.3d 100, 105 (Ill. App. Ct. 2017) (emphasis added and citation omitted). The opinion in question simply did not address whether *all* HUD regulations are incorporated into FHA mortgages, or whether failure to abide by free-standing HUD regulations that are not expressly incorporated into the contract can give rise to a *breach of contract action*. *Id.* In any event, Plaintiff cites several federal cases involving FHA loans that expressly looked to state law to determine the contours of any breach-of-contract action premised on alleged violations of HUD regulations. [23 at 11–12]; see also *Audino v. JPMorgan Chase Bank, N.A.*, 2017 WL 7693387, at *3 (S.D. Iowa June 27, 2017); *Dorado v. Bank of America, N.A.*, 2016 WL 3924115, at *3 (S.D. Fla. July 21, 2016).

5

is susceptible of more than one meaning, it is ambiguous and the court can consider extrinsic evidence to determine the parties' intent. *Right Field Rooftops*, 870 F.3d at 690. All portions of a contract should be "construed as a whole, viewing each part in light of the others." *Gallagher*, 226 Ill.2d at 233 (citation omitted). In so construing a contract, a court should "attempt to give meaning to every provision of the contract and avoid a construction that would render a provision superfluous." *Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Grp., Inc.*, 762 F.3d 673, 679 (7th Cir. 2014). And based on these principles, courts applying Illinois law hold that "a contract must display an intention to completely adopt" any external document or regulation. *Hayes v. M & T Mortg. Corp.*, 389 Ill.App.3d 388, 390 (1st Dist. 2009) (refusing to read FHA-backed mortgage to incorporate HUD regulations that it vaguely referenced, because it did not "demonstrate an intent to make each loan regulation enforceable under the parties' agreement"); see also *Dochak v. Polskie Linie Lotnicze LOT S.A.*, 189 F. Supp. 3d 798, 802–803 (N.D. Ill. 2016) (refusing to incorporate regulation because its incorporation was not "clear and specific") (citations and quotation marks omitted).

The question, then, is whether the express terms of the contract clearly imposed a limitation on Defendant's ability to collect inspection fees. Paragraph 5 of the mortgage[4] provides that "Lender may inspect the Property if the * * * loan is in default." [1-2 at 22.] Paragraph 7 authorizes the Lender to "do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property" in the event that, *inter alia*, the Borrower fails to make all timely payments, and requires the borrower to repay any expenditures. [*Id.*, at 23.] Finally, Paragraph 8 reads, in its entirety: "**Fees.** Lender may collect fees and charges authorized by the Secretary." [*Id.*]

---

[4] The Court properly considers exhibits attached to the complaint in ruling on a 12(b)(6) motion to dismiss. See Fed. R. Civ. Pro. 10(c); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014); see also, generally, [1-2].

Plaintiff first argues that Paragraph 7 does not authorize the collection of inspection fees, but presents no argument distinguishing the cases finding that identical language "unequivocally" authorized the collection of inspection fees. *Majchrowski v. Norwest Mortgage, Inc.*, 6 F. Supp. 2d 946, 965 (N.D. Ill. 1998); *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1177 (2nd Dist. Cal. 2002). Instead, Plaintiff focuses her energy on the argument that Paragraph 8 incorporates HUD regulation 24 C.F.R. § 203.377, which she claims only authorizes inspections under certain circumstances. The regulation reads:

> The mortgagee, upon learning that a property subject to a mortgage insured under this part is vacant or abandoned, shall be responsible for the inspection of such property at least monthly, if the loan thereon is in default. When a mortgage is in default and a payment thereon is not received within 45 days of the due date, and efforts to reach the mortgagor by telephone within that period have been unsuccessful, the mortgagee shall be responsible for a visual inspection of the security property to determine whether the property is vacant. The mortgagee shall take reasonable action to protect and preserve such security property when it is determined or should have been determined to be vacant or abandoned until its conveyance to the Secretary, if such action does not constitute an illegal trespass. "Reasonable action" includes the commencement of foreclosure within the time required by § 203.355(b) of this part.

Even assuming, *arguendo*, that HUD regulations placed limits on the when inspections *may* occur, the contract does not expressly incorporate any limitation. Plaintiff does not even attempt to explain how the language in the contract discussing fees "display[s] an intention to completely adopt" a regulation mandating property inspection under certain circumstances that, itself, does not mention fees. See *Hayes*, 389 Ill.App.3d at 390. Plaintiff's reading also muddies Paragraph 5, which allows property inspections (without limitation) upon default. If, in fact, Paragraph 8 *limits* lenders' abilities to make property inspections, then it simultaneously conflicts and is redundant with the limitless, permissive inspection right in Paragraph 5. *Land of Lincoln Goodwill*, 762 F.3d at 679; see also *NAR Business Park, LLC v. Ozark Automotive Distributors,*

*LLC*, --- F. Supp. 3d ---, 2019 WL 7401503, at *12 (N.D. Ill. Dec. 30, 2019) (applying Illinois law and rejecting interpretation that rendered provisions redundant or meaningless).

Moreover, Plaintiff's reading of Paragraph 8 is forced. That is, Paragraph 8 is entirely permissive and includes no words of limitation or exception. Compare Paragraph 8 ("Lender *may* collect and charges authorized by the Secretary.") with Paragraph 9 ("Lender may, *except as limited by regulations issued by the Secretary*, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument.") (emphasis added). The most natural reading of Paragraphs 7 and 8, and thus the one commanded by Illinois contract law, is that the Lender can collect both charges it expended as necessary to protect the value of the property *and* fees authorized by HUD regulations. That is, Defendant can collect (a) fees that were both necessary and authorized by HUD; (b) fees that were necessary but not authorized; and (c) fees that were authorized but not necessary. This reading gives effect to all of the contractual terms and is therefore preferred under Illinois law. In contrast, Plaintiff's reading would render the entirety of Paragraph 7 a nullity—if Defendant can *only* collect those fees authorized by the Secretary, then the description of fees in Paragraph 7 does not make sense.

Plaintiff does cite several cases that limit a lender's ability to collect inspection fees pursuant to HUD regulations. But they are all quite far afield for the purposes of this breach of contract action premised on Illinois state law. Two of Plaintiff's cases are bankruptcy decisions, which have quite dissimilar procedural postures—and neither bankruptcy court constructed the contract (or for that matter applied Illinois contract law in doing so). See *In re Ruiz*, 501 B.R. 76, 81 (E.D. Penn. 2013) (applying New York law and cursorily concluding after reviewing some, but not all, of the contract provisions that the HUD regulations forbade charging the inspection fee); *In re Brumley*, 570 B.R. 287, 290 n.3 (W.D. Mich. 2017) ("speculating" that HUD regulations

apply; summarizing the regulations without quoting them; implying that they *forbid* inspections that are not required; and explaining that an inspection was not necessary under the terms of the contract because the lender had independently verified that the debtor had not abandoned the residence). Plaintiffs' other case does not parse the contractual language that incorporates the regulation, and is therefore of limited probative value in this breach of contract action. *Riggs-Degraftenreed v. Wells Fargo Home Mortgage, Inc.*, 2016 WL 393868, at *4 (E.D. Ark. Jan. 29, 2016) (applying Arkansas law and asserting that fees can only be collected if attempts to contact the debtor by telephone had failed); see also *Right Field Rooftops*, 870 F.3d at 690.[5]

Of course, the inapplicability of this regulation to the contract does not leave Plaintiff without recourse. The terms of the contract only allow the lender to do what is necessary to protect the property upon default. A single inspection, such as what occurred here, is presumptively reasonable, *Majchrowski*, 6 F. Supp. 2d at 965, but the contract expressly limits Defendant's rights to collect inspection fees to those that are "necessary."

### C. Illinois Consumer Fraud Act

Plaintiff also argues that the collection of these fees is a violation of the ICFA. "To state a claim under the ICFA, Plaintiffs must allege five elements: (1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual

---

[5] Plaintiff also cites *Fireman's Fund Mortg. Corp. v. Zollicoffer*, 719 F. Supp. 650 (N.D. Ill. 1989), in this vein, but that opinion did not hold that the regulation was incorporated into the contract. Rather, the court observed that HUD regulations impose independent obligations upon the lender to inspect the property under certain conditions; the relationship in question is that of the lender to HUD, not the lender to the borrower. *Id.* at 657–58 ("HUD regulations transformed [lender's] right, under the Mortgage, to preserve the security value of the Premises into an obligation."). Accordingly, the opinion does not discuss inspection fees at all. And even if, assuming *arguendo*, the HUD regulations prohibited inspections, a freestanding violation of a HUD regulation does not constitute a breach of contract if the regulation in question was not expressly incorporated into the contract. *Hayes*, 389 Ill. App. 3d at 390.

damages, and (5) the damages were proximately caused by the defendant's deception." *Blankenship v. Pushpin Holdings, LLC*, 2015 WL 5895416, at *6 (N.D. Ill. Oct. 6, 2015). In determining whether a business practice is unfair,[6] courts consider "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Boyd v. U.S. Bank, N.A., ex rel. Sasco Aames Mortg. Loan Trust, Series 2003-1*, 787 F.Supp.2d 747, 751 (N.D. Ill. 2011). (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002) and citing *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972)). Unfairness under the ICFA "depends on a case-by-case analysis." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). As such, "[a]ll three criteria do not need to be satisfied to support a finding of unfairness," *Robinson*, 775 N.E.2d at 961 (citation omitted), but "the plaintiffs must describe how the [unfair practice] is oppressive or violates public policy. Without such a description, the complaint fails to state a cause of action." *Wendorf v. Landers*, 755 F. Supp. 2d 972, 979 (N.D. Ill. 2010) (quoting (*Rockford Mem'l Hosp. v. Havrilesko,* 368 Ill.App.3d 115, 306 Ill.Dec. 611, 858 N.E.2d 56, 65 (2006)).

Here, the crux of Plaintiff's argument is *not* that Plaintiff's various representations about transferring her account were unfair or deceptive. *Cf. Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("[O]nly a lunatic or a fanatic sues for $30.") Rather, she argues that *all* fees for inspections that are not mandatory are violations of the ICFA because they are against public policy; mortgagors have no reasonable alternative to paying the fee lest they lose their homes; and given the large number of mortgages in the state, a blanket policy of fee collection could cause substantial injury to Illinois residents. Defendant counters that the collection of

---

[6] Plaintiff appears to have abandoned any argument that the charging of the disputed fees was deceptive. See generally [23 (exclusively arguing that the charges were unfair).]

inspection fees pursuant to Paragraph 7 of the contract is not violative of any HUD regulations and is not oppressive and immoral as it was authorized by the contract.

Defendant has the better arguments. To be sure, "violations of other statutes or regulations * * * that themselves do not allow for private enforcement" can be violative of public policy. *Boyd*, 787 F. Supp. 2d at 752. But, as explained above, the regulation in question does not discuss fees at all and only concerns when a lender *must* conduct inspections. *Fireman's Fund*, 719 F. Supp. at 658; 24 C.F.R. § 203.377. The plain wording of the regulation also does not prohibit or limit inspections beyond those that are required. 24 C.F.R. § 203.377. Thus, there is no indication that Defendant acted against public policy in charging this fee.[7]

Plaintiff attempts to get out from under this by pointing to a since-modified HUD letter that explains how a lender may be reimbursed for inspection fees, which provides that inspection fees cannot be reimbursed for inspections that were not mandatory. See HUD Mortgagee Letter 81-26, 1981 WL 389744 (June 16, 1981). This is not the smoking gun that Plaintiff thinks it is, because that letter's guidance was since "changed," and, in any event both the modification and the regulatory cross-references in the original letter make clear that the reimbursements in question pertain only to those required by HUD. HUD Mortgagee Letter 90-34, 1990 WL 10022430 at *4 (Sept. 19, 1990) ("Mortgagee Letter 81-26 notified mortgagees that HUD would reimburse mortgagees for one inspection after a 45-day period of delinquency but 'once the property has been found to be occupied, no further inspections are required by HUD and reimbursement would not be allowed.'"); 24 C.F.R. § 203.402 (discussing a laundry-list of reimbursable expenses). That is,

---

[7] Plaintiff's argument rests on a purported violation of 24 C.F.R. § 203.377. Accordingly, Plaintiff has forfeited any argument that any of the other rules in the web of regulations that govern FHA-backed mortgages prohibit passing inspection fees on to the consumer. See *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss.").)

they say nothing about the lender's ability to charge other fees to a borrower, and they solely concern whether HUD will reimburse the lender for the inspection fees that HUD requires it to incur.

Likewise, Plaintiff's arguments regarding the instructions in the HUD Handbook are unconvincing. Preliminarily, it is not clear whether the instructions in the HUD Handbook should be considered akin to statutes and regulations, the violation of which can underlie a ICFA claim. *Boyd*, 787 F. Supp. 2d 747, 752; see also *In re Mortgage Escrow Deposit Litigation*, 1995 WL 59238, at *2–3 (N.D. Ill. 1995) (dismissing suit over violation of HUD Handbook guidelines, even when the contract in question expressly incorporated HUD regulations); cf. *Aazami v. Wells Fargo Bank, N.A.*, 2019 WL 281286, at *3–4 (D. Or. Jan 22, 2019) (taking judicial notice of Handbook). Moreover, the Handbook provision cited by Plaintiff only forbids charging inspection fees to a mortgagor when "there is evidence that the mortgagee knew the mortgagor was still in occupancy such as documented communication with the mortgagor, counseling agency, the mortgagor's attorney or the local HUD Office." [23 at 8 (quoting Administration of Insured Home Mortgages Handbook 4330.1 9-9(A)(c)(2)(d)).] Here, Plaintiff makes no such allegations—and in fact only alleges that Defendant had constructive knowledge of her continued residence because they continued sending mail to her house (*i.e.*, her last known address). [1, ¶ 23.] Plaintiff's further argument that the single inspection was unnecessary because Plaintiff in fact occupied the residence begs the question. If anything, Plaintiff's citation to the HUD Handbook further erodes Plaintiff's central contention that only fees for required inspection can be charged—the cited subsection of the Handbook contemplates that mortgagees may (a) submit required inspection fees for HUD reimbursement and (b) charge some inspection fees to the mortgagor. HUD Handbook 4330.1 9-9(A)(c)(2)(b)&(d).

Finally, as explained above, the contract clearly contemplates both property inspections and the lender's ability to pass fees along to Plaintiff. It is not clear how this is oppressive or immoral—and Plaintiff does not argue that the mortgage instrument was unconscionable. See *Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 824 n.11 (7th Cir. 2018) (analogizing oppressiveness to unconscionability). And, when the specter of a HUD regulation violation is not looming overhead, courts readily accept that inspection fees may be charged (within reason) to a borrower. *Majchrowski*, 6 F. Supp. 2d at 965. That is, there is nothing *per se* oppressive about these fees, and therefore charging a fee cannot in and of itself support an ICFA claim. Because the Court has found neither an alleged public policy violation nor an oppressive act, the Court need not determine the magnitude of harm to consumers. *Wendorf*, 755 F. Supp. 2d at 979.

## IV. Conclusion

For the reasons set forth above, Defendant's motion to dismiss [13] is granted in part and denied in part. Specifically, the Court denies Defendant's motion to dismiss for lack of personal jurisdiction but grants the motion to dismiss for failure to state a claim. Plaintiff is given until May 1, 2020 to file an amended complaint consistent with this opinion. The case is set for further status May 12, 2020 at 9:00 a.m.

Dated: March 25, 2020

Robert M. Dow, Jr.
United States District Judge