IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SYLVIA LESZANCZUK,                          )
                                            )
            Plaintiff,                      )        Case No. 19-cv-3038
                                            )
      v.                                    )        Judge Robert M. Dow, Jr.
                                            )
CARRINGTON MORTGAGE                         )
SERVICES, LLC,                              )
                                            )
            Defendant.                      )

### MEMORANDUM OPINION AND ORDER

After the Court dismissed Sylvia Leszanczuk's ("Plaintiff") complaint against Carrington

Mortgage Services, LLC ("Defendant") [26], Plaintiff filed an amended complaint [31] and a

motion for class certification [32]. Defendant again moved to dismiss [39]. For the reasons below,

Defendant's motion to dismiss [39] is granted and Plaintiff's motion for class certification [32] is

denied as moot. Because the amended complaint essentially reiterated the same claims that were

asserted in the original complaint and Plaintiff resisted the renewed motion to dismiss on the

ground that the Court's original dismissal order was in error, the Court concludes that allowing

leave to amend yet again would be futile. Accordingly, the dismissal of the amended complaint

will be with prejudice and a final judgment will enter under Federal Rule of Civil Procedure 58.

Civil case terminated.

I.     **Background**[1]

On January 29, 2010, Plaintiff entered into an FHA-insured mortgage with Netmore

America, LLC. [31, at ¶ 18]. Sometime prior to December 2016, Defendant acquired the note and

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

the mortgage and took over loan servicing. [*Id.*, at ¶¶ 17, 20]. In December 2016, Plaintiff

contacted Defendant to set up an account so that she could make timely payments. [*Id.*, at ¶ 21].

Defendant informed Plaintiff that it did not yet have a way to accept or set up payments, but that

Plaintiff had a grace period and did not need to make payments for several months. [*Id.*, at ¶ 22].

Despite this grace period, Defendant nonetheless considered her in default and inspected the

property on February 10, 2017. [*Id.*, at ¶¶ 23–25]. Defendant charged Plaintiff $20 for the

inspection and included the fee on Plaintiff's next mortgage statement. [*Id.*, at ¶ 25]. Plaintiff

paid the fee. [*Id.*, at ¶ 41].

Plaintiff filed this suit in state court, and Defendant removed [1]. Plaintiff's complaint

asserted two claims on behalf of Plaintiff and, respectively, nationwide and state-wide classes:

breach of contract and a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA")

[1-2]. The Court dismissed that complaint [26], finding that the inspection fee did not breach the

contract and that the fee could not serve as the basis for an ICFA claim. Plaintiff filed an amended

complaint on her behalf and on behalf of a nation and state-wide classes [31]. She again claims

that Defendant breached the contract and violated the ICFA. [*Id.*, at ¶¶ 48–70]. Defendant again

moved to dismiss [39].

## II.     Legal Standard

"In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a

claim to relief that is plausible on its face.'" See, *e.g.*, *Lodholtz v. York Risk Serv. Grp., Inc.*, 778

F.3d 635, 639 (7th Cir. 2015) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The

plaintiff's complaint need not include "detailed factual allegations," but it must contain more than

"a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Thus,

the complaint must include sufficient "factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, the Court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016)). ICFA claims based on unfairness, as opposed to deception, need not satisfy the heightened pleading requirements of Rule 9. *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).

III.     **Analysis**

Plaintiff's amended complaint is very similar to the first. Compare [31] with [1-2]. Instead of amending the complaint "consistent with" the Court's order [26, at 1], Plaintiff "respectfully submits that the Court's previous findings are in error and that she has adequately pled causes of action for both breach of contract and consumer fraud," [40, at 1].

A.     **Breach of Contract Claim**

In her amended complaint, Plaintiff claims that (1) her mortgage prohibited collection of fees that are not explicitly authorized by HUD regulations, (2) the inspection fee was not authorized by HUD regulations, and therefore (3) Defendant breached the contract by charging the inspection fee. [31, at ¶ 49–55]. Plaintiff also claims that Defendant breached the contract because the inspection fee breached the implied covenant of good faith and fair dealing. [*Id.*, at ¶ 56].

To support her assertion that her mortgage prohibited Defendant from collecting fees that are not authorized by HUD, Plaintiff first suggests that all "[l]oans insured by the FHA are subject to HUD regulations." [40, at 5]. In support, she cites *PNC Bank, National Association v. Wilson*, 74 N.E.3d 100 (Ill. App. 2017), a foreclosure case involving an FHA-insured mortgage, *id.* at 104–05. There, the court explained that "failure to comply with HUD's mortgage services requirements

3

contained in its regulations is a defense to a mortgage foreclosure action." *Id.* at 105. Plaintiff does not explain why the conclusion that a party to a foreclosure may use HUD's mortgage services requirements to defend against a foreclosure action means that all FHA-insured loans are subject to some or all HUD regulations. To be sure, *Wilson* does state that "[t]he federally insured mortgage loan that is the subject of this cause of action is subject to HUD regulations." *Id.* at 102. But a general rule about FHA-insured mortgages does not follow from this case-specific statement. Moreover, other cases on which Plaintiff relies expressly look to state law to determine whether any given FHA-insured mortgage incorporates HUD regulations. See [40, at 12]; *Audino v. JP Morgan Chase Bank, N.A.*, 2017 WL 7693387, at *3 (S.D. Iowa June 27, 2017); *Dorado v. Bank of Am., N.A.*, 2016 WL 3924115, at *5 (S.D. Fla. July 21, 2016). Therefore, as explained in the Court's previous order, the Court looks to Illinois contract law to determine whether and to what extent HUD regulations are incorporated into the contract. [26, at 5 & n.3].

Under Illinois law, "[t]he primary objective in construing a contract is to give effect to the intent of the parties." *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007). "[T]he best indication of that intent" is "the language of the contract alone." *Id.* If the contract's language is "clear and unambiguous," its words "must be given their plain, ordinary, and popular meaning." *Central Illinois Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004). If the contract's language "is susceptible of more than one meaning, it is ambiguous," and a court "can consider extrinsic evidence to determine the parties' intent." *Right Field Rooftops, LLC v. Chicago Cubs Baseball Club, LLC*, 870 F.3d 682, 690 (7th Cir. 2017). "A contract must be construed as a whole, viewing each provision in light of the other provisions." *Id.* As such, a court should "attempt to give meaning to every provision of the contract and avoid a construction that would render a provision superfluous." *Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Grp., Inc.*, 762 F.3d 673,

679 (7th Cir. 2014). Further, a "court will neither add language or matters to a contract about which the instrument itself is silent, nor add words or terms to an agreement to change the plain meaning of the parties as expressed in the agreement." *Dean Mgmt., Inc. v. TBS Const., Inc.*, 790 N.E.2d 934, 939 (Ill. App. 2003) (internal quotation marks and citation omitted). Finally, "[u]nder Illinois law, a document is incorporated by reference into the parties' contract only if the parties intended its incorporation," and that intent must be "clear and specific." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002); see also *Hayes v. M & T Mortg. Corp.*, 906 N.E.2d 638, 641 (Ill. App. 2009) (refusing to read FHA-insured mortgage to incorporate HUD regulations that it referenced because it did not "demonstrate an intent to make each loan regulation enforceable under the parties' agreement"); *Dochak v. Polskie Linie Lotnicze LOT S.A.*, 189 F.Supp.3d 798, 802–803 (N.D. Ill. 2016) (refusing to incorporate regulation because its incorporation was not "clear and specific" (citations and quotation marks omitted)).

As with Defendant's previous motion to dismiss, this issue comes down to "whether the express terms of the contract clearly imposed a limitation on Defendant's ability to collect inspection fees." [26, at 6]. Three paragraphs of the mortgage are most relevant here.[2] First, Paragraph 5 provides that "Lender may inspect the Property if the * * * loan is in default." [31-1, at 5]. Second, Paragraph 7 provides that if the borrower fails to make required payments or otherwise perform under the mortgage, "Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property." [*Id.*, at 6]. It also states that "[a]ny amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower." [*Id.*]. Third, Paragraph 8 provides, in its entirety, "Fees. Lender may collect fees and charges authorized by the Secretary." [*Id.*].

---

[2] The Court properly considers exhibits attached to the complaint in ruling on a 12(b)(6) motion to dismiss. See Fed. R. Civ. Pro. 10(c); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014).

5

The Court previously concluded that in order to give effect to every provision of the mortgage, it is best to read Paragraph 7 as permitting charges for actions necessary to protect the value of the Property—regardless of whether the charges are authorized by the Secretary—and to read Paragraph 8 as permitting additional charges as authorized by the Secretary—regardless of whether the charges are necessary to protect the value of the Property. [26, at 8]. Plaintiff rejects this reading. Instead, she argues that Paragraph 8 requires that HUD regulations be used to "define[] the contours of 'necessary' described in Paragraph 7." [40, at 10]. And she argues that 24 C.F.R. § 203.377 prohibits the collection of the inspection fee at issue here, making it by definition unnecessary. [*Id.*, at 6–7].

However, Plaintiff points to no language in the mortgage supporting this relationship—that is, she points to no language indicating that Paragraph 8 limits Paragraph 7. And the Court cannot add language to the mortgage to arrive at such an interpretation. See *Dean Mgmt., Inc.*, 790 N.E.2d at 939. Instead of using language from the mortgage demonstrating her claimed relationship between Paragraphs 7 and 8, Plaintiff insists that "Paragraph 8 of the Mortgage explicitly limits a lender's ability to collect fees and charges to those that are authorized by HUD." [40, at 11]. But Plaintiff fails to explain how a provision stating that the "Lender *may* collect fees and charges authorized by the Secretary," [31-1, at 6] (emphasis added), can be read to mean that the Lender can collect *only* fees authorized by the Secretary. Further, Paragraph 9 of the mortgage explicitly limits Defendant's actions by reference to HUD regulations. [See *id.*]. ("Lender may, *except as limited by regulations issued by the Secretary*, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument * * *.") (emphasis added). If the parties intended Paragraph 8 to impose similar limitations, they could have used similar language.

Plaintiff's reading of Paragraph 8 is particularly problematic because, contrary to her argument, Paragraphs 5 and 7 do permit the collection of the inspection fee.  Specifically, Plaintiff argues that Paragraph 5 does not authorize Defendant to collect inspection fees because it states that Defendant "*may* inspect the Property," not that it "*must* inspect the Property if it is owner-occupied."  [40, at 9–10].  However, the issue here is whether the mortgage permitted the inspection fee, not whether it required the fee, so this distinction is irrelevant.  Next, Plaintiff argues that Paragraph 7 does not permit the collection of the inspection fee because such interpretation "impermissibly render[s] Paragraph 8 meaningless."  [*Id.*, at 10].  But this argument is based on reading Paragraph 8 as limiting the fees that Defendant is permitted to collect to those authorized by the Secretary.  As explained above and in the Court's previous order, this "reading of Paragraph 8 is forced."  [26, at 8].  Contrary to Plaintiff's argument, Paragraph 7 permits the collection of the inspection fee: in the event Plaintiff fails to make required payments or otherwise fails to perform under the mortgage, Paragraph 7 enables Defendant to do "whatever is necessary to protect the value of the Property and Lender's right in the Property" and to charge any amounts disbursed in doing so to Plaintiff.  [31-1, at 6].  Plaintiff again does not adequately distinguish cases finding that identical language "unequivocally" authorized the collection of inspection fees. *Majchrowski v. Norwest Mortgage, Inc.*, 6 F. Supp. 2d 946, 965 (N.D. Ill. 1998); see also *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1177 (2nd Dist. Cal. 2002)).[3]

Plaintiff again cites to several cases that limit a lender's ability to collect inspection fees pursuant to HUD regulations, many of which the Court has already stated it does not find persuasive.  [26, at 8–9].  For example, Plaintiff relies heavily on *In re Ruiz*, 501 B.R. 76 (Bankr.

_____

[3] Plaintiff takes issue with the Court's reliance on *Majchrowski* and *Walker* because the mortgages in those cases were not FHA-insured.  [40, at 9].  However, as explained above, FHA-insured loans do not automatically incorporate HUD regulations, so this distinction does not diminish *Majchrowski*'s and *Walker*'s persuasiveness.

E.D. Pa. 2013), which found that an FHA-insured mortgage incorporated 24 C.F.R. § 203.377. Like this mortgage, the one in *Ruiz* stated that the "lender may collect fees and charges authorized by the Secretary." *Id.* at 81. However, the *Ruiz* court did not apply Illinois law, did not analyze other sections of the mortgage—as Illinois law requires this Court to do—and did not provide any explanation for its conclusion that the mortgage incorporated a HUD regulation. *Id.* The Court again declines to follow *Ruiz.* Plaintiff also relies on *Audino*, 2017 WL 7693387, and *Dorado*, 2016 WL 3924115. Although those cases found that HUD regulations limited fees that could be collected, the mortgages in those cases stated that lenders could charge interest "to the extent * * * permitted by regulations of the Secretary." *Audino*, 2017 WL 7693387, at *1; see also *Dorado*, 2016 WL 3924115, at *1 (interpreting mortgage with "provision that the lender may collect post-payment interest for the remainder of the month in which full payment is made, but only 'to the extent... permitted by [FHA] regulations'" (alteration in original)). This restrictive language stands in contrast to the permissive language of Paragraph 8. As the Court previously explained, Plaintiff's other cases are unpersuasive in this context. See *In re Brumley*, 570 B.R. 287, 290 n.3 (W.D. Mich. 2017) ("speculating" that HUD regulations apply; implying that the regulations *forbid* inspections that are not required; and explaining that an inspection was not necessary under the terms of the contract because the lender had independently verified that the debtor had not abandoned the residence); *Riggs-Degraftenreed v. Wells Fargo Home Mortgage, Inc.*, 2016 WL 393868, at *4 (E.D. Ark. Jan. 29, 2016) (applying Arkansas law and concluding without explanation that 24 C.F.R. § 203.377 applied); *Fireman's Fund Mortg. Corp. v. Zollicoffer*, 719 F. Supp. 650, 657 (N.D. Ill. 1989) (concluding that that the lender had a right *under the mortgage* to "preserve the security value of the Premises" and that the HUD regulation "transformed [this right] into an obligation" that lender must fulfill on behalf of HUD).

8

Plaintiff's new authority, *Mathews v. PHH Mortgage. Corp.*, 2020 WL 5260813 (N.D. Okla. Sept. 3, 2020), fares no better. The *Mathews* court determined that mortgage incorporated HUD regulations because the complaint alleged that it did. See *id.* at *1. *3. But whether a contract incorporates another document is a "legal conclusion[] * * *,which may be disregarded on a motion to dismiss." *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011); see also *Dochak*, 189 F. Supp. 3d at 803 (declining to accept as true Plaintiff's allegation that the contract incorporates certain documents "because it is a legal conclusion and not a fact"). As such, *Mathews* is not persuasive.

In short, Plaintiff's interpretation asks the court to either add language to the contract by interpreting Paragraph 8 as limiting Paragraph 7 or to read the contract in such as way as to render language in Paragraph 7 meaningless. The Court can do neither. See *Dean Mgmt., Inc.*, 790 N.E.2d at 939; *Land of Lincoln Goodwill Indus., Inc*, 762 F.3d at 679. Instead, it must "give meaning to every provision of the contract and avoid a construction that would render a provision superfluous." *Land of Lincoln Goodwill Indus., Inc*, 762 F.3d at 679. Construing the mortgage "as a whole" and "viewing each provision in light of the other provisions," *Right Field Rooftops, LLC*, 870 F.3d at 690, the Lender can (1) inspect the property if the loan is in default, as permitted by Paragraph 5; (2) collect amounts it expended as necessary to protect the value of the property after the Borrower fails to make payment or otherwise perform under the mortgage, as permitted by Paragraph 7; and (3) collect fees and charges authorized by HUD regulations, as permitted by Paragraph 8. As such, Defendant was entitled to collect the inspection fee and Plaintiff's amended complaint fails to state a breach of contract claim.[4]

---

[4] Plaintiff's amended complaint alleges that Defendant breached "the implied covenant of good faith and fair dealing. [31, at ¶ 56]. However, she does not make an argument based on this claim in her briefing and has therefore forfeited it. See *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss").). In any event,

### B.      Illinois Consumer Fraud Act Claim

Plaintiff also argues that the collection of the inspection fee violated the ICFA.  "To state

a claim under the ICFA, Plaintiffs must allege five elements: (1) a deceptive act or unfair practice

occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception

occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual

damages, and (5) the damages were proximately caused by the defendant's deception."

*Blankenship v. Pushpin Holdings, LLC*, 2015 WL 5895416, at \*6 (N.D. Ill. Oct. 6, 2015).  In

determining whether a business practice is unfair,[5] courts consider "(1) whether the practice

offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and]

(3) whether it causes substantial injury to consumers."  *Boyd v. U.S. Bank, N.A., ex rel. Sasco*

*Aames Mortg. Loan Trust, Series 2003-1*, 787 F.Supp.2d 747, 751 (N.D. Ill. 2011) (quoting

*Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002) and citing *FTC v. Sperry*

*& Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972)).  Unfairness under the ICFA "depends on a case-

by-case analysis."  *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010).  As such, "[a]ll three

criteria do not need to be satisfied to support a finding of unfairness."  *Robinson*, 775 N.E.2d at

961 (citation omitted).  That said, "plaintiffs must describe how the [unfair practice] is oppressive

or violates public policy.  Without such a description, the complaint fails to state a cause of action."

*Wendorf v. Landers*, 755 F. Supp. 2d 972, 979 (N.D. Ill. 2010) (alteration in original) (quoting

(*Rockford Mem'l Hosp. v. Havrilesko,* 858 N.E.2d 56, 65 (Ill. App. 2006)).

---

Illinois law "does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing."  *Boone v. MB Fin. Bank, N.A.*, 375 F. Supp. 3d 987, 995 (N.D. Ill. 2019).

[5] Plaintiff appears to have abandoned any argument that the charging of the disputed fees was deceptive. See [40, at 13–15] (exclusively arguing that the charges were unfair); *Firestone Fin. Corp.*, 796 F.3d at 825.

In contending that the inspection fee was unfair, Plaintiff first argues that it offends public policy because it violated HUD regulations. [40, at 14]. To Plaintiff's point, "a practice can offend public policy 'if it violates a standard of conduct contained in an existing statute or common law doctrine that typically applies to such a situation.'" *Boyd v. U.S. Bank, N.A., ex rel. Sasco Aames Mortg. Loan Tr., Series 2003-1*, 787 F. Supp. 2d 747, 752 (N.D. Ill. 2011). In arguing that the fee offended public policy, Plaintiff points to 24 C.F.R. § 203.377, related Mortgage Letters, and the HUD handbook. [6]

> In its entirety, section 203.377 provides:
>
> The mortgagee, upon learning that a property subject to a mortgage insured under this part is vacant or abandoned, shall be responsible for the inspection of such property at least monthly, if the loan thereon is in default. When a mortgage is in default and a payment thereon is not received within 45 days of the due date, and efforts to reach the mortgagor by telephone within that period have been unsuccessful, the mortgagee shall be responsible for a visual inspection of the security property to determine whether the property is vacant. The mortgagee shall take reasonable action to protect and preserve such security property when it is determined or should have been determined to be vacant or abandoned until its conveyance to the Secretary, if such action does not constitute an illegal trespass. "Reasonable action" includes the commencement of foreclosure within the time required by § 203.355(b) of this part.

24 C.F.R. § 203.377. Standing on its own, this regulation details when a mortgagee is required to conduct inspections. It does not prohibit mortgagees from conducting inspections in other circumstances, and it does not discuss fees.

Second, Plaintiff relies on Mortgage Letters 81-26 and 10-18, which further elaborate on section 203.377. [40, at 6–7]; Property Inspection Fees, 1981 WL 389744; Update of Property and Preservation (P&P) Requirements and Cost Reimbursement Procedures, 2010 WL 1976742, at *5. She first takes issue with the Court's determination that Mortgage Letter 81-26 was

---

[6] Plaintiff bases her argument on 24 C.F.R. § 203.377. Accordingly, Plaintiff has forfeited any argument that any of the other rules in the web of regulations that govern FHA-backed mortgages prohibit passing inspection fees on to the consumer. See *Firestone Fin. Corp.*, 796 F.3d at 825.

subsequently changed by Mortgage Letter 90-34, Single Family Claims for Insurance Benefits, 1990 WL 10022430. [40, at 6]. However, even assuming that Mortgage Letter 81-26 remains in full force, it does not impose a limit on inspections or associated fees. Instead, it discusses the types of inspections for which HUD would reimburse the mortgagee. See 1981 WL 389744, at *1 ("It is HUD's intent to permit mortgagees to be reimbursed for the cost of any mandatory inspection which is performed.). The same is true for Mortgage Letter 10-18. See 2010 WL 1976742, at *9 ("HUD will reimburse mortgagees for [property and preservation] actions in accordance with the provisions of this Mortgagee Letter."). Further, this letter states that "[t]he decision as to what action to take to preserve and protect the property is the mortgagee's responsibility and is independent of the amount that HUD reimburses." *Id.* at *3. Thus, even the Mortgage Letters contemplate the mortgagee taking additional steps to preserve and protect a property beyond what is required by HUD and authorized for reimbursement.

Third, Plaintiff cites to the Administration of Insured Home Mortgages Handbook ("HUD Handbook"). [40, at 7]. Chapter 9 provides that "[i]f there is evidence that the mortgagee knew the mortgagor was still in occupancy, such as documented communication with the mortgagor, counseling agency, the mortgagor's attorney or the local HUD Office, such charges are inappropriate and must not be charged to the mortgagor or included on a claim for insurance benefits." HUD Handbook, 9-9 (A)(2)(d). True, the Handbook indicates that mortgagees should not charge mortgagor inspection fees if the mortgagee knew the residence was occupied. However, the HUD Handbook does not carry the day for Plaintiff. At the outset, it is not clear whether a plaintiff can base an ICFA claim on the HUD Handbook, as the Handbook "is neither a statute nor a regulation, the difference being that HUD has not promulgated the Handbook such as to give it the force of law." *In re Mortg. Escrow Deposit Litig.*, 1995 WL 59238, at *3 (N.D. Ill. Feb. 9,

12

1995); *cf. Boyd*, 787 F. Supp. 2d at 752 (explaining that an ICFA clam can be premised on a practice that "violates a standard of conduct contained in an existing statute or common law doctrine" (internal quotations and citation omitted)). Further, the Handbook provision cited by Plaintiff forbids charging inspection fees to a mortgagor only when "there is evidence that the mortgagee knew the mortgagor was still in occupancy such as documented communication with the mortgagor, counseling agency, the mortgagor's attorney or the local HUD Office." [40, at 7] (quoting HUD Handbook 4330.1 9-9(A)(c)(2)(d)).]. Here, Plaintiff makes no such allegations. Instead, she alleges only that Defendant had constructive knowledge of her continued residence in February 2017 because she called Defendant in December 2016 and Defendant continued sending mail to her house (*i.e.*, her last known address). [31, at ¶¶ 21, 27]. Accordingly, neither section 203.377, the Mortgage Letters, nor the HUD Handbook indicate that Defendant violated public policy.

Next, Plaintiff argues that the inspection fee gives rise to an ICFA claim because it was oppressive. [40, at 14–15]. "Conduct is oppressive only if it imposes a lack of meaningful choice or an unreasonable burden on its target." *Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768, 780 (N.D. Ill. 2008). However, Plaintiff does not argue that she did not freely enter into the mortgage contract or that the contract is unconscionable. And it is not clear how a fee permitted by the mortgage can be *per se* oppressive. Because the Court has found neither an alleged public policy violation nor an oppressive act, the Court need not determine the magnitude of harm to consumers. *Wendorf*, 755 F. Supp. 2d at 979.

## IV.    Conclusion

For the reasons above, Defendant's motion to dismiss Plaintiff's amended complaint [39] is granted, and Plaintiff's motion for class certification [32] is denied as moot. Furthermore,

13

because the amended complaint essentially reiterated the same claims that were asserted in the original complaint and Plaintiff resisted the renewed motion to dismiss on the ground that the Court's original dismissal order was in error, the Court concludes that allowing leave to amend yet again would be futile. Accordingly, the dismissal of the amended complaint will be with prejudice and a final judgment will enter under Federal Rule of Civil Procedure 58. Civil case terminated.

Dated: February 3, 2021

_____

Robert M. Dow, Jr.
United States District Judge